UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESUS OROZCO ARROYO,           :   4:19-CV-00490
                               :
          Petitioner           :   (Judge Brann)
                               :
                               :   (Chief Magistrate Judge Schwab)
          v.                   :
                               :
WARDEN CLAIR DOLL, *et al.*,    :
                               :
          Respondents          :

## REPORT AND RECOMMENDATION

### I.  Introduction.

The petitioner Jesus Orozco Arroyo, an alien in immigration custody, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his removal order and challenging his continued detention without a bond hearing.   He requests that the court order that he be immediately released from detention or, in the alternative, that the court order that he be given a bond hearing before an immigration judge.   For the following reasons, we recommend that the court deny Arroyo's petition for a writ of habeas corpus to the extent it challenges Arroyo's removal order.   But we recommend that the court grant the petition to the extent it challenges Arroyo's continued detention, and we recommend that the court order that an immigration judge hold a bond hearing.

## II.   Background and Procedural History.

Arroyo, who is a native and citizen of Mexico, entered the United States when he was three or four years old without being admitted or paroled. *Doc. 1* at ¶ 11, *Doc. 1-1* at 9, 13.   In April of 2018, he pleaded guilty to use and possession of drug paraphernalia in violation of 35 P.S. § 780-113(a)(32). *Doc. 1-1* at 13.   He admitted to having a marijuana grinder. *Id.*   And in May of 2018, Arroyo was convicted of theft by unlawful taking of movable property in violation of 18 Pa.C.S.A. § 3921(a). *Id.* at 9, 13.

On May 22, 2018, the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) took Arroyo into custody and charged him with being subject to removal from the United States on two grounds. *Doc. 1* at ¶¶ 12–13; *Doc. 1-1* at 7–9.   First, ICE charged Arroyo with being subject to removal pursuant to Section 212(a)(6)(A)(i)—8 U.S.C. § 1182(a)(6)(A)(1)—of the Immigration and Nationality Act ("INA") in that he is "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Doc. 1-1* at 9. Second, based on Arroyo's theft-by-unlawful-taking conviction, ICE also charged Arroyo with being subject to removal under Section 212(a)(2)(A)(i)(I)—8 U.S.C. § 1182(a)(2)(A)(i)(I)—of the INA because he was convicted of a crime involving

2

moral turpitude. *Id*.   Arroyo has been in ICE custody since May 22, 2018. *Doc. 1* at ¶ 13.

In June of 2018, an Immigration Judge ("IJ") sustained the charge of removability under 212(a)(6)(A)(i) as Arroyo conceded that he entered the United States unlawfully. *See Doc. 1-1* at 13–14.   But because Arroyo's appeal of his theft-by-unlawful-taking conviction was still pending, the IJ did not sustain the charge of removability under 212(a)(2)(A)(i)(I) based on that conviction. *Id*. at 13.

Also in June of 2018, the IJ denied Arroyo's request for a change in custody status. *Doc. 1-1* at 31–32.   In a "Bond Memorandum Decision of the Immigration Court," the IJ explained that Arroyo was subject to mandatory detention under 8 U.S.C. § 1226(c) because of his drug-paraphernalia conviction. *Id*. at 33–35.[1] Although ICE had not charged Arroyo with being subject to removal on the basis of his drug-paraphernalia conviction, the IJ noted that "an alien need not be charged with the ground that provides the basis for mandatory detention under INA § 236(c) in order to be considered an alien who 'is deportable' on that ground" *Id*. at 34

―――――――――――――――――

[1]   Again, the IJ concluded that because Arroyo's appeal of his theft-by-unlawful-taking conviction was still pending, that conviction was not a final conviction for immigration purposes. *Id*. at 33 n.2.   Thus, the IJ did not use that conviction as a basis for concluding that Arroyo was subject to mandatory detention. *Id*.

3

(quoting *In Re Kotliar*, 24 I. & N. Dec. 124, 126 (BIA 2007)). And the IJ found that the Department of Homeland Security "would not be 'substantially unlikely to prevail' on an INA § 236(c) ground of removability if [Arroyo] were in fact charged with such a ground." *Id*. (quoting *In Re Joseph*, 22 I. & N. Dec. 799, 806 (BIA 1999) (holding that "a lawful permanent resident will not be considered 'properly included' in a mandatory detention category when an Immigration Judge or the Board is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention")). Thus, the IJ concluded that Arroyo was not eligible for bond. *Id*. And the BIA affirmed, without an opinion, the IJ's decision. *Id*. at 38.

In January of 2019, the IJ denied Arroyo's application for asylum, his application for withholding of removal, and his request for relief under the United Nations Convention against Torture. *Id*. at 26. The IJ also determined that Arroyo was not entitled to voluntary departure. *Id*. And the IJ ordered that Arroyo be removed from the United States to Mexico. *Id*. Arroyo appealed that decision to the BIA. *See doc. 1-1* at 28-30.

Arroyo then filed another motion for bond citing *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 226 (3d Cir. 2018) (holding that "an alien

detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody"). *See doc. 1-1* at 4.   An IJ denied that motion concluding that since Arroyo had an appeal before the BIA pending, *Guerrero-Sanchez* did not apply, and Arroyo was being detained pursuant to either § 1226(a) or § 1226(c). *Id*. According to Arroyo, he filed a motion for reconsideration, which an IJ denied on March 13, 2019, on the basis that Arroyo is subject to mandatory detention under § 1226(c). *See doc. 1* at 3; *doc. 1-1* at 6.

On June 6, 2019, the BIA dismissed Arroyo's appeal. *See doc. 15* at 3. Arroyo then filed a petition for review with the Third Circuit. *Id.; see also Orozco-Arroyo v. Att'y Gen.*, No. 19-2488 (3d Cir. 2019) (available through the federal court's online Public Access to Court Electronic Records (PACER) system at https://www.pacer.gov) (last visited Oct. 8, 2019).   That petition is still pending. *Id*.   And pursuant to its Standing Order Regarding Immigration Cases, the Third granted a temporary stay of removal, which is still in effect. *Id*.

In the meantime, on March 19, 2019, Arroyo filed the current petition for a writ of habeas corpus challenging his removal order and contending that his continued detention without a bond hearing violates his statutory and constitutional rights.   In this latter regard, Arroyo contends that he is not properly subject to

mandatory detention under 8 U.S.C. § 1226(c).   In claiming that he is not subject to

mandatory detention, Arroyo relies on *Mellouli v. Lynch*, 135 S.Ct. 1980, 1986,

1991 (2015) (applying the categorial approach,[2] which "looks to the statutory

definition of the offense of conviction, not to the particulars of the alien's behavior,"

and holding that the state conviction for possession of drug paraphernalia in that

case did not trigger removal under 8 U.S.C. §1227(a)(2)(B)(i) because the

Government did not "connect" an element of the conviction to a drug defined in 21

---

[2]   Under the categorial approach, "a court may only look to the statutory elements of a defendant's prior offenses and not the facts underlying those convictions." *United States v. Aviles*, No. 18-2967, 2019 WL 4309665, at *3 (3d Cir. Sept. 12, 2019). Under that approach, a "state conviction triggers removal only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law." *Mellouli*, 135 S. Ct. at 1986.   "An alien's actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." *Id*. (quoting *Moncrieffe v. Holder,* 569 U.S. 184, 190–91 (2013)).   Where a statute is divisible, i.e., it "contains alternative elements," a modified categorical approach is applied. *Aviles*, 2019 WL 4309665 at * 6.   "[T]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, 260 (2013).   Under the modified categorical approach, "a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." *Moncrieffe*, 569 U.S. at 191 (internal citations and quotation marks omitted).   Still "[o]ff limits to the adjudicator, however, is any inquiry into the particular facts of the case." *Mellouli*, 135 S. Ct. at 1986 n.4.

6

U.S.C. § 802).    The respondents answered noting that this court does not have

jurisdiction to consider Arroyo's challenge to his removal order.    They also argued

that Arroyo's continued detention under 8 U.S.C. § 1226(c), the

mandatory-detention provision, was lawful.    They did not, however, address

Arroyo's contention that he was not properly subject to mandatory detention under

§ 1226(c).    Thus, we ordered supplemental briefing on that issue.

The respondents then filed a supplemental brief asserting that given Arroyo's

Pennsylvania conviction for possession of drug paraphernalia, he is being detained

under 8 U.S.C. § 1226(c), which provides for mandatory detention of aliens

convicted of, among other offenses, an offense covered under 8 U.S.C.

§1227(a)(2)(B)(i), which authorizes the removal of an alien "convicted of a

violation of . . . any law or regulation of a State, the United States, or a foreign

country relating to a controlled substance (as defined in section 802 of Title 21),

other than a single offense involving possession for one's own use of 30 grams or

less of marijuana."    But again they did not address Arroyo's argument concerning

the effect of *Mellouli.*    Arroyo replied reiterating his argument regarding *Mellouli.*

We again ordered supplemental briefing.    The respondents then filed a

supplemental brief relying on *Rojas v. Attorney Gen. of U.S.*, 728 F.3d 203, 214–216

(3d Cir. 2013) (holding that "§ 1227(a)(2)(B)(i) requires the Department to establish that a foreign national's conviction is both (1) under a law relating to a controlled substance, and (2) involved or implicated a drug defined in section 802 of Title 21," but rejecting the categorial approach when the question is whether a state offense relates to a controlled substance as defined by 21 U.S.C. § 802).   Arroyo filed a reply.

Recently, the Third Circuit concluded "that *Mellouli* abrogated *Rojas*'s test, and directs us to apply the categorical approach to the question of whether a particular state offense relates to a controlled substance." *Hillocks v. Attorney Gen. United States*, 934 F.3d 332, 345 (3d Cir. 2019) (footnote omitted).   In light of *Hillocks*, we again ordered additional briefing.   The respondent filed an additional brief, and Arroyo, who is represented by counsel, filed a request for an extension of time to file his supplemental response.[3]   Because we conclude that whether Arroyo is detained pursuant to 8 U.S.C. § 1226(a), the general-detention provision, or § 1226(c), the mandatory-detention provision, he is entitled to a bond hearing, we recommend that his petition for a writ of habeas corpus be granted to the extent he is challenging his continued detention.

---

[3]   By a separate Order, we denied that request for an extension of time as moot given this Report and Recommendation.

8

**III.    Discussion.**

**A.   The only proper respondent in this case is Clair Doll.**

The petition names as respondents: Clair Doll, the Warden of the York County Prison; Simona Flores, an ICE Field Office Director; Ronald D. Vitiello, Acting Director of ICE; and Kirstjen Nielson, then Secretary of the Department of Homeland Security.   Pursuant to 28 U.S.C. § 2243, the writ of habeas corpus, or order to show cause, shall be directed to the petitioner's custodian.   The warden of the prison where the petitioner is held is considered the custodian for purposes of a habeas action. *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004).   Because Arroyo is incarcerated at the York County Prison, Warden Doll is the proper respondent. Flores, Vitiello, and Nielson are not Arroyo's custodian.   Thus, we recommend that they be dismissed as respondents.

**B.   This court does not have jurisdiction to review Arroyo's removal order.**

In his habeas petition, in addition to challenging his detention, Arroyo contends that his removal would violate the INA, the United States Constitution, and international law. *Doc. 1* at 8.   Although he does not elaborate on this claim, such a claim is a challenge to his removal order.

9

Pursuant to 8 U.S.C. § 1252(a)(5) (as amended by the Real ID Act of 2005, Pub.L. 109-13, 119 Stat. 231), this court does not have jurisdiction to consider Arroyo's claim regarding his removal order.   8 U.S.C. § 1252(a)(5) provides, in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

Subsection (e) of § 1252, which deals with judicial review of removal orders entered under the expedited removal procedures set forth in 8 U.S.C. § 1225(b)(1), is not applicable in this case.   Thus, this court does not have jurisdiction to review the petitioner's challenge to his removal order. *See Kolkevich v. Attorney Gen. of U.S.*, 501 F.3d 323, 329 (3d Cir. 2007) (stating that "the § 2241 process is no longer available to any alien, criminal or otherwise, seeking to challenge his or her removal").

### C.   Arroyo is entitled to a bond hearing.

The parties dispute under which provision of the INA Arroyo is being detained.

8 U.S.C. § 1226 "is the pre-removal provision of the INA and 'generally governs the process of arresting and detaining . . . aliens pending their removal.'" *Guerrero-Sanchez*, 905 F.3d at 213–14 (quoting *Jennings v. Rodriguez*, 138 S.Ct. 830, 837 (2018)).   That provision "distinguishes between two different categories of aliens"—those detained under § 1226(a) and those detained under § 1226(c). *Jennings*, 138 S.Ct. at 837.   "[A]n alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings." *Guerrero-Sanchez*, 905 F.3d at 214.   But § 1226(c) provides for mandatory detention of, among others, aliens who were convicted of certain crimes. 8 U.S.C. § 1226(c).   Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 138 S. Ct. at 847.

8 U.S.C. § 1231(a) "is the post-removal detention provision of the INA and applies to aliens who are subject to a final order of removal." *Guerrero-Sanchez*, 905 F.3d at 214.   "It provides that 'when an alien is ordered removed, the Attorney

General shall remove the alien from the United States within a period of 90 days,'" referred to as the "removal period" *Id*. (quoting 8 U.S.C. § 1231(a)(1)(A)).   8 U.S.C. § 1231(a)(2) provides that "[d]uring the removal period, the Attorney General shall detain the alien," and 8 U.S.C. § 1231(a)(3) provides that "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."   But 8 U.S.C. § 1231(a)(6) provides that certain aliens, including aliens determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may continue to be detained beyond the removal period.

Arroyo suggests that he is properly viewed as being detained under 8 U.S.C. § 1226(a), the general-detention provision.   Until recently, the respondent argued that Arroyo was detained pursuant to 8 U.S.C. § 1226(c), the mandatory-detention provision.   In their most recent brief, however, the respondent contends that because the BIA has denied Arroyo's appeal, he is now being detained under 8 U.S.C. § 1231(a), the post-removal detention provision.   But the Third Circuit has held that when a Court of Appeals has issued a stay of removal, as has the Third Circuit in Arroyo's case, the alien is not detained under § 1231, but remains detained

under § 1226. *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part on other grounds by Jennings*, 138 S. Ct. at 847.   Although the respondent acknowledges *Leslie*, he asserts that "ICE's internal administration does not follow the guidance in *Leslie*, *supra* when addressing pre and post order final detention." *Doc. 15* at 3.   Thus, even though there is a stay of removal in place, contrary to *Leslie*, ICE considers Arroyo to have been detained under § 1231(a) since the BIA dismissed Arroyo's appeal on June 6, 2019. *Id.*   And according to the respondent, since Arroyo's has been detained under § 1231(a) for less than six months, an IJ lacks jurisdiction to provide a bond hearing. *Id.* at 4.   But, the respondent continues, given the Third Circuit's decision in *Guerrero-Sanchez*, 905 F.3d at 226, "if Arroyo is still detained in the beginning of December and his removal is not imminent, Arroyo will be considered for bond under the guidance of *Guerrero-Sanchez*." *Id.*

While the respondent may not feel compelled to follow *Leslie*, we do.   And pursuant to *Leslie*, since the Third Circuit has issued a stay, Arroyo is not being detained under § 1231(a).   Thus, Arroyo is being detained either pursuant to § 1226(a), the general-detention provision, or § 1226(c), the mandatory-detention provision.

Although we ordered the respondent to address whether under *Hillocks*, Arroyo is subject to mandatory detention under § 1226(c), the respondent asserts that that "assessment requires a discussion of the complex and conflicting detention statuses currently at play in Arroyo's administrative and federal litigation." *Id*. at 2. True enough, and that is why were ordered the supplemental briefing.   But again, the respondent has not explicitly addressed that issue.   Rather, the respondent contends that "whether *Hillocks* subjects Arroyo to mandatory detention is no longer procedurally instructive for ICE; however, to the extent this Court deems *Hillocks* applicable to disqualify him from the ambit of mandatory detention, the only proper remedy available would be an order directing a bond hearing under the precepts of § 1226(a)—provided he has not yet had one prior to the adjudication of this matter." *Id*. at 5–6.

The respondent also contends that this court does not have jurisdiction to review the BIA's decision that Arroyo is subject to mandatory detention.   In this regard, he relies on 8 U.S.C. § 1226(e), which provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.   No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

14

The first sentence of this provision does not apply because the Attorney General has not made a discretionary judgment about whether Arroyo should be released on bond.   The very point of Arroyo's habeas petition is to require such a decision.   And however we may have interpreted the second sentence of § 1226(e) were we writing on a clean slate, the Third Circuit has already determined that "[n]othing in 8 U.S.C. § 1226(e) prevents us from deciding whether the immigration officials had statutory authority to impose mandatory detention." *Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013).

The respondent acknowledges that "§ 1226(e) 'does not limit habeas jurisdiction over constitutional claims or question of law.'" *Doc. 15* at 6 (quoting *Sylvain*, 714 F.3d at 155 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)); *see also Quinteros v. Warden Pike Cty. Corr. Facility*, No. 18-2503, 2019 WL 4072064, at *2 (3d Cir. Aug. 29, 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").   But the respondent contends that Arroyo is not attacking the constitutionality of § 1226(c) or the BIA's interpretation of that provision; and, thus, the court does not have jurisdiction to decide whether

Arroyo is subject to the mandatory-detention provision.   Although the respondent does not cite any cases supporting that assertion, some courts do agree with that position. *See e.g. Lorenzo v. Taylor,* No. CV 17-11640, 2018 WL 1092455, at *2 (D.N.J. Feb. 28, 2018) (citing 8 U.S.C. § 1226(e), dismissing habeas petition for lack of jurisdiction, and reasoning that the petitioner could, and in fact did, challenge administratively the decision that she is subject to mandatory detention under § 1226(e) and that decision in not reviewable by the court); *Davidson v. Green*, No. CV 16-3704 (JMV), 2017 WL 1250991, at *1 n.1 (D.N.J. Mar. 24, 2017) (holding that petitioner's "claim that his convictions did not provide a basis for detaining him, contrary to a determination made by the Immigration Court in a *Joseph* hearing, is not reviewable by a habeas court").   Nevertheless, as set forth above, the Third Circuit has determined that § 1226(e) does not bar a habeas court from determining questions of law, and whether Arroyo is subject to § 1226(c) is a question of law. Thus, it appears that the Court has jurisdiction to decide that question.[4]

But because Arroyo has now been detained more than 16 months without a bond hearing, we conclude that further delay to require the respondent to actually do

---

[4]   Because ICE did not charge Arroyo with being subject to removal based on his drug-paraphernalia conviction, there is no danger that determining whether Arroyo is subject to mandatory detention based on that conviction would call into question the validity of his removal order.

what we have ordered him to do—address whether given *Hillocks*, Arroyo is subject to mandatory detention—is not warranted.   Arroyo is entitled to a bond hearing whether he is being detained under § 1226(a) or § 1226(c).   If he is detained under § 1226(a), he is entitled to a bond hearing pursuant to that statute and implementing regulations.   And, assuming for the sake of argument that he is detained under § 1226(c), given his prolonged detention, he is entitled to bond hearing.

Although 8 U.S.C. § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, *Demore v. Kim*, 538 U.S. 510, 531 (2003), prolonged detention raised due process concerns.   The Third Circuit addressed the prolonged detention of aliens under § 1226(c) in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015).

In *Diop*, applying the cannon of constitutional avoidance, the Third Circuit held that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the

17

community." 656 F.3d at 231.   The court reasoned that "[a]t a certain point,

continued detention becomes unreasonable and the Executive Branch's

implementation of § 1226(c) becomes unconstitutional unless the Government has

justified its actions at a hearing inquiring into whether continued detention is

consistent with the law's purposes of preventing flight and dangers to the

community." *Id*. at 232.   Thus, the court concluded that when detention becomes

unreasonable, which determination is based on a "fact-dependent inquiry," "the Due

Process Clause demands a hearing, at which the Government bears the burden of

proving that continued detention is necessary to fulfill the purposes of the detention

statute." *Id*. at 233.   The court stated that applying those principles, "there can be no

question that Diop's detention for nearly three years without further inquiry into

whether it was necessary to ensure his appearance at the removal proceedings or to

prevent a risk of danger to the community, was unreasonable and, therefore, a

violation of the Due Process Clause." *Id*. at 234–35.

In *Chavez-Alvarez,* the Third Circuit granted the habeas petition of an alien

who claimed that the Government was violating his right to due process by detaining

him under 8 U.S.C. § 1226(c) for a prolonged period without a bond hearing. 783

F.3d at 478.   Noting that whether detention has become unreasonable is "highly

fact-specific," the court recognized that at a certain point continued detention

without a bond hearing violates due process:

> [D]ue process requires us to recognize that, at a certain
> point—which may differ case by case—the burden to an alien's
> liberty outweighs a mere presumption that the alien will flee
> and/or is dangerous.   At this tipping point, the Government can
> no longer defend the detention against claims that it is arbitrary
> or capricious by presuming flight and dangerousness: more is
> needed to justify the detention as necessary to achieve the goals
> of the statute.   As we said in *Diop,* section 1226(c) "implicitly
> authorizes detention for a reasonable amount of time, after which
> the authorities must make an individualized inquiry into whether
> detention is still necessary to fulfill the statute's purposes of
> ensuring that an alien attends removal proceedings and that his
> release will not pose a danger to the community." *Id.* at 231.   In
> Diop's case, we weighed the goals of the statute against the
> personal costs to his liberty resulting from his detention of
> roughly two years, eleven months, and concluded that Diop's
> detention was unconstitutional. *Id.*

*Id.* at 474–75.   And the court concluded that "beginning sometime after the

six-month timeframe considered by *Demore,* and certainly by the time Chavez–

Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties

outweighed any justification for using presumptions to detain him without bond to

further the goals of the statute." *Id*. at 478.   The court determined that

*Chavez-Alvarez* was entitled to a bond hearing. *Id*.

To the extent the holdings in *Diop* and *Chavez-Alvarez* were grounded in the

cannon of constitutional avoidance, those holdings do not survive *Jennings*. *See*

*Guerrero-Sanchez,* 905 F.3d at 222, 222 n.11.   But "*Jennings* did not call into question [the Third Circuit's] constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018).   Thus, the constitutional reasoning of *Diop* and *Chavez-Alvarez* remain applicable. *See Vega v. Doll*, No. 3:17-CV-01440, 2018 WL 3765431, at *8 (M.D. Pa. July 11, 2018) (report and recommendation of magistrate judge stating that "[e]ven if *Jennings* effectively abrogated *Diop* and *Chavez-Alvarez*, their constitutional considerations still retain persuasive value"), *report and recommendation adopted*, 2018 WL 3756755, at *5 (M.D. Pa. Aug. 8, 2018).

At a certain point, detention without a bond hearing violates due process. *See Chavez-Alvarez,* 783 F.3d at 474–75; *Diop*, 656 F.3d at 232.   And that point has been reached in this case.   Arroyo has been detained for more than 16 months.   The length of Arroyo's detention weighs in favor of granting his petition. *See Kleinauskaite v. Doll*, No. 4:17-CV-02176, 2019 WL 3302236, at *6 (M.D. Pa. July 23, 2019) (finding that "Ms. Kleinauskaite's detention escaped the realm of reason" after twelve months); *Bah v. Doll*, No. CV 3:18-1409, 2018 WL 5829668, at *1 (M.D. Pa. Nov. 7, 2018) (granting habeas petition where the petitioner had been "in

custody in excess of 14 months without an individualized bond hearing"); *but see Crooks v. Lowe*, No. 1:18-CV-0047, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (denying habeas petition where the petition was "subject to mandatory detention for approximately eighteen months" during which "his case has proceeded through the removal process at a reasonable pace and there is no indication in the record that the government has improperly or unreasonably delayed the proceedings"); *Fernandez v. Lowe*, No. 3:17-CV-2301, 2018 WL 3584697, at *5 (M.D. Pa. July 26, 2018) (holding that 15-month detention not unconstitutional where the case had "proceeded at a reasonable pace").

And Arroyo faces the prospect of continued detention.   Briefing on his petition for review in the Third Circuit is ongoing and is not scheduled to be completed until early November. *See Orozco-Arroyo v. Att'y Gen.*, No. 19-2488 (3d Cir. 2019).   We do not know how long the Third Circuit will take to rule on Arroyo's petition for review after the briefing is completed.   In sum, we cannot determine how long his petition for review will be pending in the Third Circuit.

Further, the respondent does not assert that Arroyo unreasonably delayed the proceedings or that Arroyo's challenge to his removal order was not in good faith.

Thus, we conclude that his detention is the result of his good faith pursuit of administrative and judicial review.

Given the circumstances, due process demands that Arroyo be given a bond hearing before an immigration judge under the standards set forth in *Chavez-Alvarez.*

## IV.   Recommendations.

Accordingly, for the foregoing reasons, we recommend that the court grant in part and deny in part Arroyo's petition for a writ of habeas corpus.   More specifically, we recommend that the court deny the petition to the extent that Arroyo is challenging his removal order.   But we recommend that the court grant the petition to the extent that Arroyo is challenging his continued detention.   In this latter regard, we recommend that the court order that, within 21 days, an immigration judge conduct a bond hearing in accordance with *Chavez-Alvarez.*   We further recommend that the court dismiss Flores, Vitiello, and Nielson as respondents.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of October, 2019.

**_S/Susan E. Schwab_**
Susan E. Schwab
Chief United States Magistrate Judge

23